[No. 4167-1.   Division One.   March 29, 1976.]

*In the Matter of the Welfare of*
ROSALIO HERNANDEZ.

*Mullen & Angevine* and *Earl F. Angevine,* for petitioner (appointed counsel for appeal).

*Patrick R. McMullen, Prosecuting Attorney, William H. Nielsen, Chief Deputy,* and *Larry ·E. Moller, Deputy,* for respondent.

ANDERSEN, J.—

### FACTS OF CASE

This case is before us on certiorari to review an order of the juvenile court for Skagit County. By its order, the juvenile court declined jurisdiction of the minor petitioner and ordered him remanded to the Superior Court for trial and disposition as an adult.

The evidence at the decline or transfer hearing was basically uncontroverted in the following respects.

The minor (hereinafter the "petitioner") then aged 16½, along with an adult male friend aged 21 or 22, picked up a

young woman hitchhiker in Mount Vernon in the early morning hours of September 6, 1975. While driving along the highway with the young woman as a passenger, they discussed in Spanish what they planned to do with her.

Having formulated their plans, the petitioner and the male adult drove to a secluded place where they held the young woman in their car for approximately 1½ hours and repeatedly raped her and forced her to commit acts of sodomy. When she fought and screamed, the petitioner helped subdue her. He struck her about the face and held her head down on the seat to prevent her from screaming.

When apprehended by the police, and after being advised of his rights, petitioner gave a confession.

Following a decline hearing, the following findings of fact, conclusions of law and order were entered by the juvenile court judge:

FINDINGS OF FACT

1.

That ROSALIO HERNANDEZ is presently sixteen (16) years and six (6) months of age.

2.

That there is substantial evidence which indicates that the minor committed the criminal act alleged, to wit, rape and/or sodomy.

3.

That the alleged act of rape and/or sodomy is a very serious crime against a person and the interest of the community require [sic] that the minor be placed under legal restraint or discipline.

4.

That the said act was accomplished by force and threats of bodily harm, actual physical blows to the victim's person, without the consent of the victim, and therefore was committed in an aggressive, violent and premeditated manner.

5.

That the minor presents some danger to society.

6.

That although there is evidence indicating the minor may be inmature [sic] in certain ways, the weight of the evidence shows that the sophistication and maturity of

the minor is such that he should be treated as an adult, to wit:

(1) That minor left his parents' home against their wishes and resided with his girlfriend in her parents' home.

(2) That minor has not attended school since April, 1974, also against his parents' wishes.

(3) That he is employed as a field worker when work is available.

(4) That his associates are generally adult individuals.

7.

That said minor does not have an extensive juvenile record, having been referred for only one shoplifting offense in August of 1973.

8.

That there presently exist no beneficial resources to deal with the minor and this offense within the Juvenile Court System, to wit:

(1) That probation supervision, foster care, or group home placement are not viable resource alternatives for this case.

(2) That the Juvenile Department of Institutions does not offer the specific treatment programs which would be needed by the minor, nor does it offer the appropriate security for the community provided by the adult system. . .

9.

That the minor's companion in the the [sic] alleged incident is a 22 year old adult who is charged in Superior Court because of this incident.

From the foregoing Findings of Fact, the Court makes the following:

CONCLUSIONS OF LAW

1.

That this Court has jurisdiction of the person and subject matter of this proceeding.

2.

That it is in the best interest and welfare of the minor and of society that the Juvenile Court decline jurisdiction and remand said minor to adult court.

ORDER

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that said minor is remanded to the Superior Court of the

State of Washington for Skagit County for trial and disposition as an adult.

Done In Open Court, this 1st day of October, 1975.

/s/ Walter J. Deierlein, Jr.
Judge

## Issue

All of the assignments of error and issues designated in brief of petitioner essentially challenge the sufficiency of the proof presented at the hearing and the propriety of the decision of the juvenile court in declining jurisdiction of the minor petitioner.

## Decision

Conclusion. The record reflects that the petitioner's legal rights were scrupulously accorded him at all times. Furthermore, the findings of the juvenile court are supported by substantial evidence which amply sustains that court's order declining jurisdiction of the petitioner and remanding him to the Superior Court for trial and disposition as an adult.

As we recently had occasion to note, "[t]he decision of the United States Supreme Court in *In re Gault*, 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428 (1967) marked a dramatic change in juvenile court law." *In re Noble*, 15 Wn. App. 51, 547 P.2d 880 (1976). A companion case to *Gault* was *Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966) decided the year previous to *Gault*.

*Gault* has had such a profound impact on the whole juvenile court system that the relatively narrow but significant effects of *Kent* are occasionally overlooked. *Kent* related only to limitations imposed on the exercise by juvenile courts of their statutory authority to relinquish jurisdiction on minors to permit them to be tried in adult criminal courts.[1] It is in the wake of the changes wrought by *Kent* that the present case is decided.

The law of this State is that

---

[1] Schwerin, *The Juvenile Court Revolution in Washington,* 44 **Wash.** L. Rev. 421, 423 (1969); Schornhorst, *The Waiver of Juvenile Court*

the court, *in its discretion,* may order [juveniles under 18 years of age who have been arrested upon a charge of having committed a crime] to be turned over to the proper officers for trial under the provisions of the criminal code.

(Italics ours.) RCW 13.04.120. This statute is constitutional. *In re Harbert,* 85 Wn.2d 719, 720, 538 P.2d 1212 (1975). The power to waive jurisdiction of a juvenile to permit the juvenile to be prosecuted as an adult is also discretionary in most other states. 1 C. Torcia, *Wharton's Criminal Evidence* § 9 (12th ed. 1974).

■■ We have reviewed the entire record certified to this court and conclude therefrom as follows.

The petitioner was required to be given a hearing, to be represented by counsel and to have access to all of the records considered by the court at the hearing. *Kent v. United States,* 383 U.S. at 557. *Dillenburg v. Maxwell,* 70 Wn.2d 331, 344, 413 P.2d 940, 422 P.2d 783 (1966-67). He was accorded these rights.

The decline or transfer hearing held in this case was relatively formal, although it was not required to be. *In re Noble, supra.* The ultimate purpose of such hearing was to determine whether the best interests of the juvenile and of society would be served by the retention of juvenile court authority over the juvenile or whether under all of the circumstances, the juvenile should be transferred to be tried as an adult. *State v. Piche,* 74 Wn.2d 9, 14, 442 P.2d 632 (1968).

Due notice was given of the petition and of the time, place, and purpose of the hearing as required. JuCR 6.2.

As also required, the juvenile probation department made an investigation and evaluation of the case and reported to the court in writing. JuCR 6.3.

Since the potential adult prosecution was a felony, the juvenile court was obliged to consider the report of the

*Jurisdiction: Kent Revisited,* 43 Ind. L.J. 583 (1968); Walsh, *An Analysis of the Jurisdictional Waiver Procedure in the Juvenile Courts,* U.C.L.A.-Alas. L. Rev. 152 (1975).

juvenile probation department, the evidence produced at the hearing and was likewise required to enter written findings of fact and conclusions of law in support of its decision. JuCR 6.4. This it did.

The findings of fact and conclusions of law setting forth the reasons for the decline of jurisdiction were of sufficient specificity to permit their meaningful review and to establish that the matter of decline or transfer received the careful consideration of the juvenile court. *Kent v. United States*, 383 U.S. at 561; *In re Harbert, supra* at 720.

The appendix to *Kent v. United States*, 383 U.S. at 565 (see footnote 4 on page 546) sets forth eight criteria traditionally used by courts in considering whether or not they should exercise their discretion to decline jurisdiction.[2]

---

[2]"The determinative factors which will be considered by the Judge in deciding whether the Juvenile Court's jurisdiction over such offenses will be waived are the following:

"1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver.

"2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.

"3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted.

"4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney).

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U. S. District Court for the District of Columbia.

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.

"7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this Court, or prior commitments to juvenile institutions.

"8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court." *Kent v. United States*, 383 U.S. at 566-67.

These have been adopted for use in this jurisdiction. *State v. Williams*, 75 Wn.2d 604, 606, 453 P.2d 418 (1969). Similar criteria are set forth in the local juvenile court rules of Skagit County. The findings of fact above set out and the rest of the record before us establish conclusively that the juvenile court did consider these criteria. Not all eight criteria existed in this case, but most of them did. It is not necessary, however, that all of these factors be present for the juvenile court to be justified in declining jurisdiction as it did here. In re *Burtts*, 12 Wn. App. 564, 575, 530 P.2d 709 (1975).

The findings of fact were supported by substantial evidence and we, therefore, accept them as verities. *State v. Williams, supra*; *Williams v. Rhay*, 73 Wn.2d 770, 772, 440 P.2d 427 (1968). They also fully support the juvenile court's conclusions of law.

There has been no showing of any irregularity or abuse of discretion. To the contrary, the record affirmatively establishes that the juvenile court properly exercised its discretion and scrupulously accorded the petitioner his legal rights in all respects.

Affirmed.

FARRIS and SWANSON, JJ., concur.

Petition for rehearing denied June 23, 1976.

Review denied by Supreme Court October 19, 1976.