[No. 3785-1-III.   Division Three.   October 20, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. RANDY
DEAN DUDREY, *Appellant*.

*Sharon Carberry,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *David Waterbury, Deputy,* for respondent.

McINTURFF, C.J.—Randy Dean Dudrey appeals from a first degree felony–murder conviction.

On September 17, 1979, Mr. Dudrey and his friend, Gary Wiley, drove from Seattle to Yakima to visit Mr. Dudrey's father and stepmother, Robert and Hattie Dudrey, who were in their mid–60's. Mr. Dudrey's father was the manager of the Jackpot Service Station and, together with his wife Hattie, resided in the combination living/business areas of the station. After dinner that evening, the elder Mr. Dudrey cashed a check for his son from a cash bag containing the business day's proceeds. Mr. Dudrey, his father, and Mr. Wiley then decided to go celebrate the senior Mr. Dudrey's birthday. Mrs. Dudrey declined the invitation to join them stating, "You boys go along without me."

During the evening a plan to burglarize the Jackpot Service Station was discussed. The facts surrounding the burglary and Hattie's subsequent death are disputed. According to Randy Dudrey's testimony, the plan called for Mr. Wiley to enter the residence, grab the day's receipts from a desk, and quickly retreat. Mr. Dudrey stated he threw a rock through the sliding glass door and Mr. Wiley entered. He then allegedly heard the voice of his stepmother and ran away, realizing they might be caught. When Mr. Wiley did not follow, Mr. Dudrey returned to the room to find Mr. Wiley choking his stepmother and slamming her head on the floor. He stopped when Mr. Dudrey entered. After determining Mrs. Dudrey was dead, they left the room and went to a nearby cottage to rinse off the blood

and remove bloodstained clothes. He also testified Mr. Wiley returned to the scene, apparently looking for the money bag, but returned to the car after a short period of time and the two then drove to Seattle.

Mr. Wiley[1] testified to a different version of the events in the interior of the dwelling. He said Mr. Dudrey threw the rock through a sliding glass door and then, after breaking out more glass with his forearm, entered ahead of Mr. Wiley and disappeared in the darkness. Mr. Wiley said while he looked for the receipts, Mrs. Dudrey approached him from behind, asked what he was doing, cried out for Randy and grabbed Mr. Wiley's hair. During an ensuing scuffle Mrs. Dudrey was struck twice in the face by Mr. Wiley's fist. While still grabbing his hair, Mrs. Dudrey fell, pulling Mr. Wiley down on top of her. He said he was pushing her away by her neck to break her grip on his hair. At that point, Mr. Wiley testified, Mr. Dudrey, who was holding a lamp in his hand, yelled, "Kill her, kill her." Mr. Wiley said he then got up, heard Mrs. Dudrey mumbling Randy's name, and, as he walked out of the room, turned to see Mr. Dudrey hurl a lamp at Mrs. Dudrey's head from a distance of 4 feet. He testified he waited outside for Mr. Dudrey for a short period, then gave up waiting and reentered the room to find Mr. Dudrey still looking for the money.[2] He put his ear to Mrs. Dudrey's breast but heard no heartbeat or breathing and told Mr. Dudrey she was dead. The two men subsequently left. The remainder of Mr. Wiley's testimony is in basic agreement with Mr. Dudrey's version.

Mr. Dudrey maintains the court erred in denying argument on his alleged lack of participation in the burglary.

---

[1] Mr. Wiley was arrested at the same time as Mr. Dudrey and had earlier pleaded guilty to an amended charge of second degree felony–murder and was awaiting sentencing.

[2] Neither Mr. Dudrey nor Mr. Wiley discovered the money bag. Ironically, it had fallen under Mrs. Dudrey's body in the scuffle and was not found until she was removed from the scene.

He argues that Washington law requires the State to show a dangerous common design and purpose to effect the underlying felony before the murder by one felon can be imputed to the other. He contends that since he only intended to smash the window and purloin the money, Mr. Wiley's assault on Mrs. Dudrey was outside the common design. Additionally, he argues his withdrawal from the felony when he heard Mrs. Dudrey's voice ceased his participation in the underlying felony.

■ We begin our analysis by noting a homicide is deemed committed during the perpetration of a felony, for the purpose of felony–murder, if the homicide is within the "res gestae" of the felony, *State v. Golladay,* 78 Wn.2d 121, 130–31, 470 P.2d 191 (1970), *i.e.,* whether there was a close proximity in terms of time and distance between the felony and the homicide. In the case of felony–murder, the act, coupled with a felonious intent, may be transferred to the act resulting in death. "While it may be that the felony murder statute is harsh, and while it does relieve the prosecution from the burden of proving intent to commit murder, it is the law of this state." *State v. Thompson,* 88 Wn.2d 13, 17, 558 P.2d 202 (1977). Thus, the State is required to prove beyond a reasonable doubt that, at the time of the homicide, the appellant was engaged in the commission of the felony. *State v. Daniels,* 119 Wash. 557, 560, 205 P. 1054 (1922).

Mr. Dudrey relies on *State v. Diebold,* 152 Wash. 68, 277 P. 394 (1929) and *State v. Golladay, supra,* which require the act resulting in death to be within the res gestae of the intended felony. Washington law does require that there be an intimate and close connection between the underlying felony and the killing. The court in *Diebold* stated at page 72:

> "It may be stated generally that a homicide is committed in the perpetration of another crime, when the accused, intending to commit some crime other than the homicide, is engaged in the performance of any one of the acts which such intent requires for its full execution,

and, while so engaged, and within the *res gestae* of the intended crime, and in consequence thereof, the killing results. It must appear that there was such *actual legal relation between the killing and the crime committed or attempted,* that the killing can be said to have occurred as a part of the perpetration of the crime, or in furtherance of an attempt or purpose to commit it. In the usual terse legal phraseology, *death must have been the probable consequence of the unlawful act.*

(italics ours) citing 13 R.C.L. 845. In *Diebold,* the court was unable to find such a relationship when the defendant hit and killed a young woman while returning an automobile which had been stolen earlier. The principal distinction with the present case is that *Diebold* involved two men who had parked the stolen automobile, thought things over, discussed it with a friend, and then decided to return the car. The court reasoned that time, place and evidence of original criminal purpose are relevant elements of res gestae in determining culpability. The court determined that, "at the time appellant drove his car against the unfortunate victims of his carelessness, he was [not] committing, or attempting to commit, or withdrawing from the scene of, a felony." *Diebold, supra* at 73–74. Here, Messrs. Dudrey and Wiley freely admitted planning to burglarize a residence where they knew Mrs. Dudrey was sleeping. Mr. Dudrey admitted throwing a large rock through the window. As a probable consequence of the broken window, Mrs. Dudrey immediately investigated, found Gary Wiley, and was murdered. No delay in time or difference in place was manifested.

In *State v. Golladay, supra,* the court reversed a conviction under the felony–murder rule because the State had failed to prove an underlying felony (robbery) had occurred. Therefore, it is distinguishable from these facts where Mr. Dudrey admitted he and his partner planned the burglary and took substantial steps toward its commission, the only contention being whether the murder was part of the burglary.

Here, the jury was properly instructed that in order to

convict the defendant of the offense charged, the State was required to prove beyond a reasonable doubt that, at the time of the killing, the appellant was *committing or attempting to commit* the crime of first degree burglary and that death was caused *in the course of and furtherance of such a crime.*[3]

Mr. Dudrey claims the court erred in failing to give an instruction addressing the issue of his termination of the enterprise between himself and Mr. Wiley as cofelons.

■ As previously indicated, the State was required to prove beyond a reasonable doubt that Mr. Dudrey was

---

[3]RCW 9A.32.030 sets out the pertinent elements for murder in the first degree under the instant facts: (1) a person must *commit or attempt to commit* the crime of burglary in the first degree; (2) *in the course of and in furtherance of the crime* or in immediate flight therefrom, he or another participant caused the death of an innocent party. These two elements constitute the entire crime of felony–murder and are set out in instruction No. 13 which stated:

To convict the defendant of the crime of murder in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 18th day of September, 1979, HATTIE ARABELA DUDREY was killed;

(2) That RANDY DEAN DUDREY and GARY WILEY were *committing or attempting* to commit the crime of First Degree Burglary;

(3) That RANDY DEAN DUDREY or GARY WILEY caused the death of HATTIE ARABELA DUDREY *in the course of and in the furtherance of such crime;*

(4) That HATTIE ARABELA DUDREY was not a participant in the crime; and

(5) That the acts which caused the death of the decedent occurred in Yakima County, Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Italics ours.) The State need only prove involvement in the underlying crime and the death of an innocent person caused by a participant who acts in furtherance of the crime. Additionally, instruction No. 12 defined felony–murder as follows:

A person commits the crime of murder in the first degree when he commits *or attempts to commit* First Degree Burglary and in the course of and in furtherance of such crime he or another participant causes the death of a person other than one of the participants.

(Italics ours.)

engaged in the crime of first degree burglary[4] or attempted first degree burglary[5] and that Mrs. Dudrey's death was caused in the course of and in furtherance of the burglary or its attempt. Had the burglary been abandoned or terminated prior to death,[6] then the jury could not have found beyond a reasonable doubt that the defendant caused the death "in the course of and in furtherance of the crime." For the purpose of felony–murder, "the burglary is deemed to be in progress after the break and entry when defendant is still on the premises or when the defendant is fleeing from the scene." 2 C. Torcia, *Wharton on Criminal Law* § 148 (14th ed. 1979). Mr. Dudrey received instructions defining the terms "participant"[7] and "accomplice".[8] Thus,

---

[4]Instruction No. 15 defined first degree burglary as follows:

"A person commits the crime of burglary in the first degree when he enters or remains unlawfully in a dwelling with intent to commit a crime against a person or property therein, and if, in entering or while in the dwelling or in immediate flight therefrom, that person or another participant in the crime assaults any person therein."

[5]The jury was instructed on what constitutes attempt. Instruction No. 9 stated:

"A person commits the crime of attempt to commit any crime when, with intent to commit that crime, he or she does any act which is a substantial step toward the commission of that crime. In order for conduct to be a substantial step, it must be strongly corroborative of the actor's criminal purpose. Such conduct must be more than mere preparation to commit a crime."

[6]RCW 9A.08.020(5) states:

"Unless otherwise provided by this title or by the law defining the crime, a person is not an accomplice in a crime committed by another person if:

". . .

"(b) He terminates his complicity prior to the commission of the crime, and either gives timely warning to the law enforcement authorities or otherwise makes a good faith effort to prevent the commission of the crime."

[7]Instruction No. 8A stated:

"A participant is one who takes part in and shares in common some activity with another."

[8]Instruction No. 8 defined accomplice as:

"A person is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

"(1) *solicits, commands, encourages, or requests another person to commit*

the jury could have determined he was not a participant in either the burglary or the murder.[9] In *State v. McKeown,* 23 Wn. App. 582, 588, 596 P.2d 1100 (1979) we said a person who participates in some phase of a crime with the intention of helping to bring it about is an accomplice. Here, Mr. Dudrey admitted acts of planning the burglary with knowledge his stepmother was in the dwelling. He elicited the cooperation of Gary Wiley and admitted throwing a rock through the window which completed the attempt and facilitated Wiley's entry. These acts were substantial steps beyond mere preparation for the crime of burglary. As noted in *State v. Denson,* 574 S.W.2d 445, 448 (Mo. Ct. App. 1979):

*the crime;* or

"(2) *aids or agrees to aid another person in planning or committing the crime.*

"The word 'aid' means all assistance whether given by words, acts, encouragement, support or presence. *A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.*

"A person legally accountable for the conduct of another person may be convicted on proof of the commission of the crime and of his complicity therein, though the person claimed to have committed the crime has been convicted of a different degree of crime." (Italics ours.)

The State was required to prove every element of the crime charged. Thus, we find no merit in Mr. Dudrey's claim based upon *Mullaney v. Wilbur,* 421 U.S. 684, 44 L. Ed. 2d 508, 95 S. Ct. 1881 (1975). *See State v. Peyton,* 29 Wn. App. 701, 719, 630 P.2d 1362 (1981).

[9]The jury was presented with the elements of a defense under RCW 9A.32-.030(1)(c). Instruction No. 14 read:

"It is a defense to a charge of murder in the first degree based upon committing or attempting to commit burglary in the first degree that the defendant:

"(1) Did not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and

"(2) Was not armed with a deadly weapon, or any instrument, article or substance readily capable of causing death or serious physical injury; and

"(3) Had *no reasonable grounds* to believe that any other participant was armed with such a weapon, instrument, article or substance; and

"(4) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury.

"This defense must be established by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true."

"We are unwilling to sanction as the law of this state that a defendant can first, by words and actions, put in operation a difficulty, or aid and abet in the commencement of it, and, after having by his course of conduct brought the principal actors into a deadly contest, that he can then flee from the scene of the struggle and thereby relieve himself absolutely from the results of such fatal difficulty. Such is not the law of this state, and the court very properly refused the instructions requested upon that subject."

citing *State v. Forsha,* 190 Mo. 296, 88 S.W. 746 (1905). We find no error.[10]

Mr. Dudrey also argues the court erred in failing to instruct the jury on second degree felony–murder.

■ We do not agree. The court correctly ruled that Washington law forbids the giving of the lesser charges unless there is evidence to support them. *State v. Johnston,* 84 Wn.2d 572, 578, 527 P.2d 1310 (1974). A person is charged with first degree burglary when with intent to commit a crime he enters a *dwelling* and assaults any person therein. RCW 9A.52.020. In contradistinction, burglary in the second degree relates to the felonious entry into a *building.* RCW 9A.52.030. Here, Hattie and Robert Dudrey lived in the structure which incorporated the service station; as such it is considered a dwelling and her death was the result of an assault. Since there was no basis upon which to instruct the jury on second degree burglary, there was no basis to instruct on second degree murder. As stated in *State v. Anderson,* 10 Wn.2d 167, 178, 116 P.2d 346 (1941):

> The homicide cannot be disassociated from the burglary. Viewing the charge in either aspect, as a premeditated murder or as a killing incident to the commission of, or attempt to commit, the crime of burglary, the evidence did not warrant instructions on murder in the second degree or manslaughter.

---

[10]We note that defense counsel made an exhaustive and impassioned closing argument to the jury concerning the theory of Mr. Dudrey's withdrawal.

456

The judgment of the Superior Court is affirmed.

MUNSON and ROE, JJ., concur.

Reconsideration denied November 10, 1981.

Review denied by Supreme Court January 8, 1982.