[No. 7592–0–II. Division Two. November 5, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. PATRICIA G. TOOMEY, *Appellant*.

*Timothy K. Ford* and *John H. McGilliard,* for appellant (appointed counsel for appeal).

*C. Danny Clem, Prosecuting Attorney,* and *Dennis A. Kole, Deputy,* for respondent.

WORSWICK, A.C.J.—Duane Dudley enlisted 16–year–old Patricia Toomey to help him rob a sailor, using a gun. The scheme went horribly awry; Dudley killed the victim. The juvenile court declined jurisdiction and Toomey, tried as an adult, was convicted of first degree murder. On this appeal, she challenges the juvenile court's declination order and assigns error to several trial court rulings. We affirm.

It was Toomey who first gave police the details of the crime.[1] Dudley, she said, asked her to come with him

---

[1]Toomey had told a friend that she knew who "killed the sailor" but did not

because "I'm a girl and I can always lure them." He also asked her to carry his gun in her purse. They spent several hours looking for a victim. Finally, about 1:30 a.m., they managed to lure Gerard Marzulli into an alley on the pretense of making a drug sale. Toomey slipped Dudley the gun and pretended to go off to get the merchandise. Dudley thought he saw a badge in Marzulli's wallet and was about to be arrested. He shot Marzulli. A few minutes later, on a prearranged signal, he rejoined Toomey and told her what he had done. On the basis of Toomey's admissions and corroboration by others, both she and Dudley, also a juvenile, were arrested and referred to the juvenile court.

The juvenile court conducted an extended declination hearing, a principal focus of which was the prospect of Toomey's rehabilitation in the juvenile, as opposed to the adult, penal system. At the conclusion of the hearing, the court made 21 findings of fact and declined jurisdiction. Toomey essentially claims here that the findings are unsupported by the evidence. She also claims that the declination order was based, in part, on unconstitutional sex discrimination. We conclude that the essential findings are supported by substantial evidence, that the juvenile court properly exercised its discretion, and that the discrimination claim is without merit. Accordingly, we hold the declination order valid.

██ Under RCW 13.40.110:

(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile *or the public*. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel.

(3) When the respondent is transferred for criminal prosecution or retained for prosecution in juvenile court, the court shall set forth in writing its finding which shall

want to go to the police because she was afraid she would be sent home. Her friend's boyfriend gave Toomey's name to the police, and they picked her up for questioning.

be supported by relevant facts and opinions produced at the hearing.

(Italics ours.) The juvenile court's order declining jurisdiction is discretionary and is subject to reversal only if exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable. *In re Harbert*, 85 Wn.2d 719, 538 P.2d 1212 (1975). Nevertheless, discretion is limited and is not properly exercised unless appropriate consideration is given to the *Kent* standards (*Kent v. United States*, 383 U.S. 541, 16 L. Ed. 2d 84, 86 S. Ct. 1045 (1966)). *State v. Holland*, 98 Wn.2d 507, 656 P.2d 1056 (1983); *State v. Foltz*, 27 Wn. App. 554, 619 P.2d 702 (1980). It is not necessary, however, that all of the *Kent* standards be satisfied. *In re Hernandez*, 15 Wn. App. 205, 548 P.2d 340 (1976). Factual determinations must be based only on a preponderance of the evidence. *State v. Jacobson*, 33 Wn. App. 529, 656 P.2d 1103 (1982). Factual findings supported by substantial evidence will not be disturbed. *State v. Barriault*, 20 Wn. App. 419, 581 P.2d 1365 (1978).

We will not burden this opinion by reciting the voluminous findings in this case. It will suffice to note that we can see, woven through the factual detail, the appropriate consideration and application of the *Kent* standards. Those standards, slightly paraphrased, are:

1. The seriousness of the alleged offense and whether the protection of the community necessitates prosecution of the case under the adult system.
2. The degree of premeditation, willfulness, violence and aggression involved in the alleged offense.
3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if injury resulted.
4. The prosecutive merit of the complaint.
5. The desirability of trial and disposition of the entire offense in one court when the defendant's associates are adults.[2]

---

[2]At the time of Toomey's hearing, the disposition of Dudley's case had not yet been decided. Thereafter, however, Dudley was also transferred to adult status.

6. The sophistication and maturity of the juvenile, determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
7. The record and the previous history of the juvenile.
8. Prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile through services and facilities currently available to the juvenile court.

*Kent v. United States, supra.*

The first four standards are obviously satisfied. The underlying attempted robbery was a serious crime against a person, admittedly premeditated and most certainly violent. Toomey's argument that she does not represent a threat to the community is contrary to the facts. Her own expert, Dr. John Petrich, testified that her participation was influenced by certain personality disorders[3] and that she would repeat past behavior patterns if they were not corrected.

The decision was also supported by Toomey's history and her sophistication. Whether by choice or not, Toomey had been on her own for over a year. She knew how to operate in her environment, and she readily involved herself in adult situations. Although she had no record with the juvenile court, she had admittedly participated in drug sales and prostitution. She was a willing partner in the attempted robbery of Marzulli.

■ Toomey's argument centers largely on only a part of the last *Kent* standard, the "rehabilitation" or "treatment" standard.[4] She makes essentially two assertions: (1) the

---

[3]Problems diagnosed by Dr. Petrich included drug and alcohol abuse, cyclothymic personality disorder (somewhat similar to a mild manic–depressive personality disorder, embodying abrupt and often uncontrollable mood shifts), and passive–dependent personality disorder, resulting in a tendency to conform her behavior to that of her associates.

[4]Toomey overlooks the other part of the last standard: prospects for adequate protection of the public. The juvenile court concluded that Toomey's interests would best be served by retaining juvenile court jurisdiction, but that protection

juvenile court based its order in part on the fact that she was pregnant, thus unconstitutionally discriminating against her on the basis of sex; and (2) the order is an abuse of discretion because it is contrary to the recommendations of the experts who testified. We find no merit in these assertions.[5]

We reject the notion that any consideration of physical characteristics or conditions attributable to only one sex amounts to unconstitutional discrimination. The equal protection clause does not demand that things which are different in fact be treated in law as though they were the same. Where a difference in treatment is not invidious, but rather reflects the fact that the sexes are not similarly situated in certain circumstances, it will be upheld. *Michael M. v. Superior Court,* 450 U.S. 464, 67 L. Ed. 2d 437, 101 S. Ct. 1200 (1981); *Seattle v. Buchanan,* 90 Wn.2d 584, 584 P.2d 918 (1978); *State v. Wanrow,* 88 Wn.2d 221, 559 P.2d 548 (1977); *Singer v. Hara,* 11 Wn. App. 247, 522 P.2d 1187 (1974).[6]

The juvenile court considered Toomey's pregnancy only

---

of the public required transfer to adult status. The public interest alone clearly permits declination under the language of RCW 13.40.110.

[5]Toomey did not raise the constitutional issue below, but merely argued that too much emphasis was being put on that particular problem. We are required to consider such a question for the first time on appeal if it involves manifest error actually affecting a constitutional right. RAP 2.5(a)(3); *State v. Holt,* 38 Wn. App. 34, 687 P.2d 218 (1984). It is debatable whether Toomey's claim qualifies, but we nevertheless elect to consider it.

[6]In *Michael M. v. Superior Court,* the Court upheld California's statutory rape law, which made men, alone, liable for the act of sexual intercourse. It noted that the difference in treatment was based upon recognition of obvious physical differences and the fact that only women could become pregnant. *Seattle v. Buchanan* upheld a municipal ordinance forbidding exposure in a public place of female breasts, and not male breasts on the basis of biological differences. *State v. Wanrow* held that the amount of force considered reasonable in self-defense could be different if the altercation were between a woman and a man, rather than two men. In *Singer v. Hara,* the court upheld the State's right to deny a marriage license to two adults of the same sex, ruling that the denial was "founded upon the unique physical characteristics of the sexes" and the policies for sanctioning marriage.

in terms of the problems it generated. According to the evidence, the juvenile system was not equipped to deal with those problems. It was in fact virtually certain that Toomey would not be kept at a state juvenile facility for more than a few months before being transferred to a private institution to have her child. If she decided to keep the child, she would then probably go to a group home. The transiency would disrupt counseling for her psychological problems. Moreover, attention was likely to be diverted from those problems by pregnancy–related concerns, such as the attainment of child–rearing skills or the termination of the parent–child relationship. These additional complications directly affected Toomey's potential for rehabilitation in the time available under juvenile jurisdiction. Consideration of the pregnancy was therefore not only proper, but necessary.

▆ The contention that the juvenile court erred in refusing to adopt the expert's recommendations is also without merit.[7] Expert opinions are not binding. The court, not the particular expert testifying, makes the decision. *State v. Ashley*, 16 Wn. App. 413, 558 P.2d 302 (1976). *See also State v. Loux*, 24 Wn. App. 545, 604 P.2d 177 (1979). Substantial evidence supported the court's conclusion that there were neither facilities nor time to treat Toomey effectively in the juvenile system.[8] Whether treatment was successful or not, the court would lose jurisdiction and the power to control Toomey's behavior after 4 years. The adult system could exercise control over a much longer

---

[7]We note that the experts' opinions were not so one–sided as Toomey suggests. Both did recommend placement in a juvenile facility. However, both emphasized the need for a minimum of 2 to 3 years of intensive treatment, and neither was willing to say the pregnancy would not complicate that process.

[8]Much of this evidence came from a juvenile probation officer, David Corn. Corn had spent 11 years in that position and was qualified as an expert by his experience and specialized knowledge of the juvenile court system. ER 702. *See also State v. Murphy*, 35 Wn. App. 658, 669 P.2d 891 (1983). Some corroborative evidence was also supplied by the court appointed expert, clinical psychologist Barbara White–Davis.

period. The court did not err by not following the recommendations.

In sum, we are satisfied that the juvenile court meticulously considered the *Kent* standards and that a balance of those standards favored declination. Its factual determinations were based on substantial evidence. Its discretion was properly exercised.

Toomey assigns three errors concerning the trial itself: (1) to admission of Dudley's hearsay statements under ER 804; (2) to a felony murder instruction; and (3) to the court's failure to instruct on a statutory defense to felony murder. We find no merit in these contentions.

■ By the time Toomey came to trial, Dudley had also been transferred to adult status, and had been tried and convicted. His appeal was pending. The State called him as a witness but he refused to testify, claiming the privilege against self–incrimination. He persisted, even when the court ordered him to testify. Thereupon, the State offered various hearsay statements Dudley had made—to other witnesses and to Toomey herself—under the general authority of ER 804. Toomey challenges admission of these hearsay statements only on the basis that Dudley was not "unavailable" within the meaning of ER 804(a)(2).[9] This is plainly not so. The fact that Dudley had an appeal pending and refused to testify, asserting his privilege against self–incrimination, squarely satisfies the requirements of the rule. *State v. Dictado,* 102 Wn.2d 277, 687 P.2d 172 (1984).

Toomey contends, nevertheless, that the State was required to offer Dudley transactional immunity in order to obtain his testimony. There is absolutely no authority for such a proposition and we decline to supply it. Immunity would have jeopardized his conviction, for if he were successful in obtaining a reversal, he could not be tried again. *State v. Runions,* 100 Wn.2d 52, 665 P.2d 1358 (1983). The

---

[9]The rule provides that a declarant is unavailable if he "[p]ersists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; . . ."

State was not required to take that risk.

Toomey next complains of the court's felony murder instruction which reads as follows:

> A person commits the crime of murder in the first degree when she *or an accomplice* attempts to commit robbery in the first or second degree and in the course of and in furtherance of such crime or in immediate flight from such crime she or another participant causes the death of a person other than one of the participants.

(Italics ours.) She seems to argue that the instruction is inconsistent with the statute because the statute contemplates that the person chargeable with felony murder be the principal in commission of the underlying felony. This argument ignores the legal status of an accomplice under Washington law.

RCW 9A.32.030(1)(c) provides that a person is guilty of murder in the first degree when:

> (c) He commits or attempts to commit the crime of either (1) robbery, in the first or second degree, (2) rape in the first or second degree, (3) burglary in the first degree, (4) arson in the first degree, or (5) kidnapping, in the first or second degree, and; in the course of and in furtherance of such crime or in immediate flight therefrom, he, *or another participant,* causes the death of a person other than one of the participants; . . .

(Italics ours.) Under RCW 9A.08.020(1), (2)(c), and (3)(a)-(ii),[10] a person who knowingly aids another in the commission of a crime is an accomplice, *and is guilty of that crime.*

---

[10]RCW 9A.08.020(1), (2)(c), and (3)(a)(ii) provides:

"Liability for conduct of another—Complicity. (1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.

"(2) A person is legally accountable for the conduct of another person when: . . .

"(c) He is an accomplice of such other person in the commission of the crime.

"(3) A person is an accomplice of another person in the commission of a crime if:

"(a) With knowledge that it will promote or facilitate the commission of the crime, he

"(i) solicits, commands, encourages, or requests such other person to commit it; or

There is no separate crime of being an accomplice; accomplice liability is principal liability. *See State v. Davis,* 101 Wn.2d 654, 682 P.2d 883 (1984). "Participant" is not defined in the statute. In the context used, and by dictionary definition, it obviously means another person involved in the crime—*i.e.,* another principal or accomplice.

Toomey planned the robbery with Dudley, carried his gun in her purse, and helped lure Marzulli into the alley. She cannot avoid responsibility for the shooting on the basis of her prearranged absence during the attempted robbery and ensuing murder. An accomplice is guilty of any crime, including murder, committed or attempted by his associate, whether he is present or not. *State v. Valladares,* 99 Wn.2d 663, 664 P.2d 508 (1983); *State v. Landaker,* 138 Wash. 267, 244 P. 555 (1926); *State v. Dudrey,* 30 Wn. App. 447, 635 P.2d 750 (1981). Toomey's guilt flows from her aid in putting into operation the crime which generated the murder. She fits squarely within the scope of RCW 9A.32-.030(1)(c). The challenged instruction stated the law correctly.

 Finally, Toomey contends that the court erred in refusing her proposed instruction on the statutory defense to felony murder. That defense is available, under RCW 9A.32.030(1)(c),[11] only if the defendant had no reasonable grounds to believe that any other participant was armed

---

"(ii) aids or agrees to aid such other person in planning or committing it; or . . ."

[11]RCW 9A.32.030(1)(c) provides in pertinent part: "in any prosecution under this subdivision (1)(c) in which the defendant was not the only participant in the underlying crime, if established by the defendant by a preponderance of the evidence, it is a defense that the defendant:

"(i) Did not commit the homicidal act or in any way solicit, request, command, importune, cause, or aid the commission thereof; and

"(ii) Was not armed with a deadly weapon, or any instrument, article, or substance readily capable of causing death or serious physical injury; and

"(iii) Had no reasonable grounds to believe that any other participant was armed with such a weapon, instrument, article, or substance; and

"(iv) Had no reasonable grounds to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury."

with a deadly weapon, instrument, article, or substance.

Toomey knew Dudley had a gun; she carried it for him and gave it to him just before the shooting. She argues, however, that she did not know it was loaded, having seen Dudley remove the bullets earlier in the evening and put them in his pocket. That does not get her very far. Under RCW 9A.04.110(6) a firearm is a deadly weapon, whether loaded or unloaded. Moreover, it simply was not reasonable for Toomey to assume that Dudley would ask her to bring the gun if he did not intend to use it, reloaded with the bullets she knew he had. She could not satisfy the requirements of the statute and there was no basis for the requested instruction.

Affirmed.

PETRIE and REED, JJ., concur.

Review denied by Supreme Court January 4, 1985.