109 P.3d 823 (2005)
154 Wash.2d 71
STATE of Washington, Respondent,
v.
Kimberly Kristina CARTER, Petitioner.
No. 74907-8.
Supreme Court of Washington, En Banc.
Argued October 21, 2004.
Decided April 14, 2005.
*824 David Bruce Koch, Seattle, for Petitioner.
Constance Mary Crawley, Prosecutors Office, Snohomish Co. Courthouse, Everett, for Respondent.
ALEXANDER, C.J.
¶ 1 The primary question that this case presents is whether the giving of an erroneous accomplice liability instruction is per se harmless error in a case where a defendant, found guilty of first degree felony murder, was involved in planning and setting up the predicate felonies but did not participate in the commission of the underlying crimes. We conclude that the giving of the erroneous instruction was not per se harmless error but that it was harmless under the facts of this case. We, therefore, affirm the Court of Appeals.

I. FACTS
¶ 2 Jim Cason, Rachel Holmes, Devlin Ramsey, and Duncan Gibson all lived with Scott Donaldson at Donaldson's home in Everett. Kimberly Carter, whose mother lived a few houses away from Donaldson's house, frequently visited Donaldson's house and got to know all of the persons who lived there. *825 Carter's boyfriend, Andrew Raymond, was also acquainted with the residents of Donaldson's house.
¶ 3 After Carter assisted Duncan Gibson in selling a quantity of marijuana, she made a telephone call to Raymond and advised him that Gibson was in possession of a significant quantity of marijuana and cash at Donaldson's house. During this call, Carter and Raymond discussed robbing Gibson of his drugs and money. During the course of the conversation, they agreed upon a plan that involved armed entry into Donaldson's house and the taking of drugs and cash from him at gunpoint.
¶ 4 Pursuant to the plan, Carter, Raymond, and Raymond's friend, Albert Jaquez, rendezvoused at Carter's Seattle apartment. It was there that they made final preparations for the planned robbery. To ensure that Gibson would be present at Donaldson's house, Carter had her brother, Joe Izynski, place a telephone call to Gibson and arrange to meet him at the house ostensibly to buy a quantity of marijuana. Thereafter, Carter, Raymond, and Jaquez proceeded to the Donaldson home. Raymond and Jaquez, both of whom were carrying firearms, were escorted to the door of Donaldson's house by Carter. After Carter knocked on the door, she left Raymond and Jaquez and proceeded to her mother's house.[1]
¶ 5 Raymond and Jaquez then entered Donaldson's house. Upon entry, they encountered Rachel Holmes and Jim Cason and ordered them to the floor. While Jaquez robbed Holmes and Cason of certain of their possessions, Raymond proceeded upstairs. He encountered Donaldson in an upstairs bedroom and ordered him to lie on the floor. When Donaldson did not comply, Raymond shot him twice. Donaldson died soon thereafter from the gunshot wounds.
¶ 6 Raymond and Jaquez then left the house with approximately two pounds of marijuana, but no cash. Following the incident, Raymond and Jaquez divided the marijuana that they had taken from the house.
¶ 7 Carter was charged with first degree felony murder and witness tampering. She was convicted of both charges and was sentenced to prison.[2]
¶ 8 Carter appealed only her felony murder conviction, contending, among other things, that the accomplice liability instruction was flawed. The challenged instruction read as follows:
A person is an accomplice in the commission of a crime if, with knowledge that it will promote or facilitate the commission of a crime, she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
Clerk's Papers at 191. The Court of Appeals, Division One, citing its holding in State v. Bolar, 118 Wash.App. 490, 78 P.3d 1012 (2003), held that, in the context of felony murder, an erroneous accomplice liability instruction is per se harmless. It reasoned that
when it comes to felony murder standing alone, and where the evidence conclusively shows that all of the participants acted as principals in committing the predicate felony, an accomplice liability instruction is superfluous, for the felony murder statute itself establishes the complicity of both the killer and nonkiller participants ... as principals.
State v. Carter, 119 Wash.App. 221, 229, 79 P.3d 1168 (2003). It affirmed Carter's conviction. Carter thereafter petitioned this court to review the Court of Appeals' decision and we granted the petition.

II. WAS THERE INSTRUCTIONAL ERROR?
¶ 9 A trial judge errs by giving the jury an accomplice liability jury instruction *826 that refers to the defendant's knowledge of "a crime," rather than "the crime." See State v. Cronin, 142 Wash.2d 568, 578-80, 14 P.3d 752 (2000); State v. Roberts, 142 Wash.2d 471, 510-13, 14 P.3d 713 (2000). We have said:
It is a misstatement of the law to instruct a jury that a person is an accomplice if he or she acts with knowledge that his or her actions will promote any crime .... for accomplice liability to attach, a defendant must not merely aid in any crime, but must knowingly aid in the commission of the specific crime charged.
State v. Brown, 147 Wash.2d 330, 338, 58 P.3d 889 (2002) (citing Roberts, 142 Wash.2d at 509-13, 14 P.3d 713; Cronin, 142 Wash.2d at 578-80, 14 P.3d 752). Both parties agree that the accomplice liability jury instruction that was given here was erroneous because it referred to Carter's knowledge of "a crime" rather than "the crime."

III. DOES THE INSTRUCTIONAL ERROR NECESSITATE A NEW TRIAL?
¶ 10 Carter, citing our holdings in Roberts and Cronin, contends that she should have a new trial because of the flawed accomplice liability instruction. The State responds, as it did at the Court of Appeals, that the instructional error was harmless and that the conviction should, therefore, stand.

A. Was the instructional error harmless error per se?

¶ 11 The State asserts that the Court of Appeals correctly concluded that because Carter was charged with felony murder, the flawed accomplice liability instruction was necessarily harmless error. In support of this contention, it argues that accomplice liability is irrelevant to felony murder because the coparticipant liability clause of the felony murder provision of the first degree murder statute, RCW 9A.32.030(1)(c), alone, provides the mechanism by which Carter is criminally liable for the actions of her confederates. It claims that "an individual charged with felony murder is `inherently charged and convicted as a principal,'" Suppl. Br. of Resp't at 11 (quoting Bolar, 118 Wash.App. at 505, 78 P.3d 1012), and that a conviction for felony murder necessarily carries with it a finding that the individual convicted was a "participant." It reasons that because Carter was a "participant" for purposes of the felony murder provision of the first degree murder statute, she need not be found to have been an accomplice to the underlying crime.
¶ 12 Carter responds that because she did not actually participate in the commission of the burglary or robbery she can be tied to the predicate felonies only as an accomplice. Only after her complicity for the underlying felonies has been established via accomplice liability, she asserts, may she be held responsible for the homicide under the coparticipant liability clause of the felony murder provision of the first degree murder statute. Carter's argument is that because accomplice liability is necessary to tie her to the underlying felonies, the erroneous accomplice liability instruction cannot be deemed harmless error per se. Carter contends, additionally, that a holding that flawed accomplice liability instructions are per se harmless in the context of felony murder would violate this court's holding in Brown that whether erroneous accomplice liability instructions are harmless must be decided on a case-by-case basis based on the particular facts of the case.
¶ 13 The instant case raises the interplay between two different legal mechanisms by which criminal liability for an act can be imputed to one who did not actually commit the act. One mechanism is the accomplice liability statute, RCW 9A.08.020, which provides that an individual can, under certain circumstances, be held vicariously liable for the criminal conduct of another, including where the individual is an "accomplice" to the one actually committing the crime. Basically, this statute indicates that where an individual does not actually commit a crime, he or she can still be held criminally liable for such crime as an accomplice of another if, "[w]ith knowledge that it will promote or facilitate the commission of the crime," he or she "solicits, commands, encourages, or requests [another] person to commit it" or "aids or agrees to aid [another] person in planning or committing it." RCW 9A.08.020(3)(a)(i), (ii).
*827 ¶ 14 If convicted as an accomplice, an individual is considered to have actually committed the crime on the basis that "[t]he liability of the accomplice is the same as that of the principal." State v. Graham, 68 Wash.App. 878, 881, 846 P.2d 578 (1993); see also State v. McDonald, 138 Wash.2d 680, 687-89, 981 P.2d 443 (1999); State v. Carothers, 84 Wash.2d 256, 264, 525 P.2d 731 (1974), disapproved on other grounds by State v. Harris, 102 Wash.2d 148, 685 P.2d 584 (1984). Thus, an individual convicted as an accomplice is subject to all the legal consequences of a crime as if he or she had actually been a principal in its commission.
¶ 15 The felony murder provision of the first degree murder statute establishes a separate mechanism by which one who commits a predicate felony may be criminally liable for a homicide committed in the course of that felony by a coparticipant in the commission of the underlying felony. Specifically, the first degree murder statute, RCW 9A.32.030(1), provides in pertinent part that:
(1) A person is guilty of murder in the first degree when:
....
(c) He or she commits or attempts to commit the crime of either (1) robbery in the first or second degree ... [or] (3) burglary in the first degree ... and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants....
(Emphasis added.) As this court has observed "[t]he felony murder statute expressly establishes the nonkiller participant's complicity in the homicide." State v. Rice, 102 Wash.2d 120, 125, 683 P.2d 199 (1984).
¶ 16 The aforementioned participant liability clause of the felony murder provision of the first degree murder statute is essentially a built-in vicarious liability provision that provides a mechanism by which liability for a homicide may be imputed to a coparticipant who does not commit a homicide. Thus, though one participant in a predicate felony, alone, commits a homicide during the commission of, or flight from, such felony, the other participant in the predicate felony has, by definition, committed felony murder. In such cases, the State need not prove that the nonkiller participant was an accomplice to the homicide. See Bolar, 118 Wash.App. at 500-06, 78 P.3d 1012.
¶ 17 In cases where an individual charged only with felony murder was involved in planning and setting in motion the underlying felony, but did not participate in the actual commission of that crime, both accomplice liability and coparticipant liability must operate in order for him or her to be convicted of felony murder. The State is incorrect when it suggests that the coparticipant liability clause of the felony murder provision of the first degree murder statute is sufficient to support a conviction of the defendant in such a case. That is so because the felony murder provision of the first degree murder statute requires that a "participant" be one who actually commits the underlying felony or one who is an accomplice in the commission of such crime.
¶ 18 "Participant" for purposes of the felony murder provision of the first degree murder statute is not defined in statute. See State v. Toomey, 38 Wash.App. 831, 840, 690 P.2d 1175 (1984). In Toomey, however, the Court of Appeals provided a definition, stating: "[i]n the context used, and by dictionary definition, [participant] obviously means another person involved in the crime  i.e., another principal or accomplice." Id. Based on this definition, which we approve, it is clear that a "participant" must either be a principal (i.e., one who actually participates directly in the commission of the crime) or an accomplice (i.e., one who meets the statutory definition of accomplice).
¶ 19 The language of the felony murder provision of the first degree murder statute requires that a "coparticipant" be one who actually commits or attempts to commit the underlying felony. As we observed above, it provides that a person is guilty of murder where "[h]e or she commits or attempts to commit" a predicate felony "and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants." *828 RCW 9A.32.030(1)(c) (emphasis added). Thus, in order for a person to be found guilty of felony murder, the State must prove that he or she committed or attempted to commit a predicate felony and that he or she, or a coparticipant, committed homicide in the course of commission of the felony. See State v. Dudrey, 30 Wash.App. 447, 450-55, 635 P.2d 750 (1981).
¶ 20 Here, Carter did not actually commit and, because she was not present at Donaldson's house, could not have actually committed, either of the underlying felonies.[3] Indeed, the State did not contend that she did and no evidence was presented at trial to suggest she actually committed either underlying felony. That being the case, Carter could not be held liable for the homicide committed by Raymond based only on the coparticipant liability clause of the felony murder provision of the first degree murder statute. In order to satisfy the first prong of the felony murder provision of the first degree murder statute (by establishing that she committed a predicate felony), the State was required to prove that she was an accomplice to the underlying felonies. Only in that way could the State establish that she should be treated as if she actually committed the underlying felony, thus being a "coparticipant" for purposes of the felony murder provision of the first degree murder statute. Therefore, the accomplice liability mechanism is necessary to establish that Carter was a "coparticipant" and liable for the killing of Donaldson.
¶ 21 In summary, where an individual who is charged with first degree murder based on the felony murder provision of the first degree murder statute has not participated directly in the commission of the predicate felony, the State must establish that he or she was an accomplice to the predicate felony in order to sustain a conviction. Only when his or her complicity in the underlying felony has been established does the coparticipant clause of the felony murder provision of the first degree murder statute operate to impute criminal liability for the homicide committed in the course of or in furtherance of the felony. Here, as we have observed, the evidence did not establish that Carter committed the predicate felony. Therefore, the State had to establish that Carter was an accomplice to the underlying felonies of burglary or robbery in order to obtain a felony murder conviction. To establish that she was an accomplice, the accomplice liability statute, RCW 9A.08.020, had to be satisfied. We hold that because the accomplice liability statute must be satisfied, the giving of the erroneous accomplice liability jury instruction was not harmless error per se.

B. Was the instructional error harmless error under the facts?
¶ 22 Although the erroneous accomplice liability instruction in this case was not per se harmless, it is still subject to harmless error analysis. See Brown, 147 Wash.2d at 332, 58 P.3d 889. "An erroneous instruction is harmless if, from the record in [the] case, it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Id. Whether a flawed jury instruction is harmless error depends on the facts of a particular case. Id.
¶ 23 The giving of an erroneous accomplice liability instruction may be found to be harmless even where it is clearly evident that the defendant was convicted as an accomplice based only on his or her knowledge of the crime charged. See State v. Berube, 150 Wash.2d 498, 509, 79 P.3d 1144 (2003). However, where a defendant is charged with only one crime, a flawed accomplice liability instruction may not be harmless where evidence of uncharged crimes is presented to *829 the jury. State v. Stovall, 115 Wash.App. 650, 657, 63 P.3d 192 (2003). In Stovall, the Court of Appeals indicated that "if evidence of an uncharged crime is before the jury and the State argues that the defendant's participation in `any' crime triggered liability for the specific crime charged, reversal is appropriate." Id. But, where the prosecution neither presents evidence of uncharged crimes nor argues that the jury may base accomplice liability on the defendant's knowledge of any crime other than the one charged, the erroneous accomplice instruction may be harmless. See id.; State v. Moran, 119 Wash.App. 197, 215, 81 P.3d 122 (2003).
¶ 24 Here, Carter was charged with only one felony (based on two possible predicate felonies). Petitioner claims, however, that she may have been convicted as an accomplice based on her knowledge of some other, uncharged crime. Pet'r's Suppl. Br. at 12 ("Jurors could have based Carter's liability on her participation in `a' crime (perhaps assault, perhaps mere theft) without ever finding that she knowingly assisted in a first-degree robbery or first-degree burglary."). The State counters that Carter was charged only with felony murder based on her being an accomplice to first degree burglary or first degree robbery, that no argument was made at trial that Carter committed any other crimes, and that it was not argued before the jury that Carter could be convicted as an accomplice based on her knowledge of any other crime.
¶ 25 At trial, the State focused exclusively on the felony murder and the underlying felonies of burglary and robbery. Evidence of other crimes was not emphasized to the jury. Furthermore, in its closing arguments to the jury regarding the events at Donaldson's house, the State discussed only the burglary, robbery, and homicide. In sum, no argument was presented that accomplice liability could be based on Carter's knowledge of any crime other than the two predicate felonies described in the charging document.[4] Indeed, in its brief to this court, petitioner points to no specific instances at the trial where the State suggested that her conviction as an accomplice could be based on the commission of any crime other than first degree burglary or first degree robbery.
¶ 26 Considering the record here, it is evident that the jury found Carter was an accomplice to the burglary or robbery based on her knowledge of only those crimes, not any other crime. Consequently, we are satisfied beyond a reasonable doubt that the erroneous accomplice liability jury instruction did not contribute to the conviction of Carter for first degree felony murder.

IV. CONCLUSION
¶ 27 In a case such as this, where an individual who aided in the planning of and preparation for the predicate felony but did not take part in the actual commission of the crime is charged with felony murder for a homicide committed in the course of commission of such felony, an erroneous accomplice liability jury instruction is not per se harmless error. However, based on the record before us we can say that we are convinced beyond a reasonable doubt that the erroneous accomplice liability jury instruction did not contribute to Carter's conviction for first degree felony murder. Consequently, the giving of the erroneous instruction was harmless error and we, therefore, affirm the decision of the Court of Appeals.
WE CONCUR: C. JOHNSON, MADSEN, BRIDGE, CHAMBERS, OWENS, FAIRHURST, JJ., and IRELAND, J. Pro Tem.
SANDERS, J. (dissenting).
¶ 28 Because of the instructional error ("a crime" versus "the crime"), the jury could have speculated about other uncharged crimes and convicted Kimberly Carter accordingly. This is unacceptable. It relieves *830 the State of its burden to prove every element of the crime beyond a reasonable doubt. The conviction must be reversed and the case remanded for a new trial. See State v. Cronin, 142 Wash.2d 568, 580, 14 P.3d 752 (2000).
¶ 29 The State charged Carter with first degree felony murder predicated on first degree robbery or first degree burglary. Carter backed out after knocking on the door, retreating to her mother's house nearby. Then Andrew Raymond and Albert Jaquez entered the house, took property, and killed Scott Donaldson. Since Carter did not actually commit these crimes as a principal, she could be found guilty only as an accomplice. The instructional error allowed the jury to imagine any uncharged crime such as theft or assault, convicting Carter if it concluded she knew she was aiding in any imagined crime. However the rule requires the State to prove the accomplice knew she was aiding in only the specific crime charged.
¶ 30 State v. Bui, (companion case to State v. Cronin), illustrates the danger of an erroneous accomplice instruction. There the jury asked the judge: "`To be an accomplice to first degree assault, does he need to have knowledge that he is assisting in a first degree assault or that he is promoting a crime of any kind.'" 142 Wash.2d at 573, 14 P.3d 752 (quoting Clerk's Papers). The jury was confused, rightly so, by the erroneous instruction. In Bui the jury voiced its confusion by asking the trial judge for clarification. Here the jury could just as easily have been confused, but did not ask, instead choosing to reach a verdict based on its best (and possibly wrong) understanding of the law. Such a possibility taints the verdict, requiring reversal and a new trial.
¶ 31 I dissent.
NOTES
[1] Carter's former boyfriend, Kevin Grover, testified that Carter had told him she went to the door of Donaldson's house with Raymond and Jaquez but "chickened out" and then went to her mother's home to await completion of the robbery. Verbatim Report of Proceedings at 360.
[2] The witness tampering charge stemmed from Carter's attempt to influence a witness to change her version of the events that occurred at Donaldson's house.
[3] As noted above, Carter was charged with felony murder based on the predicate felonies of first degree burglary or first degree robbery. Because she was not present at the scene where the burglary and robbery occurred, by definition she did not actually commit either crime. RCW 9A.56.190 provides that "[a] person commits robbery when he unlawfully takes personal property from the person of another or in his presence against his will by the use or threatened use of immediate force." RCW 9A.52.020 provides that a person commits burglary "if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building." Neither of these crimes can be committed by an individual who was not present at the scene of the crime.
[4] The State made arguments to the jury regarding the witness tampering charge as well. Because that crime occurred after the commission of the crime at Donaldson's house and because Carter was the lone principal in committing the witness tampering, the jury could not have found Carter guilty as an accomplice based on the witness tampering charge. Indeed, the record shows that Carter has not argued to this court that the jury could have mistakenly found her to be an accomplice based on her commission of the crime of witness tampering.