81 P.3d 883 (2003)
119 Wash.App. 549
STATE of Washington, Respondent,
v.
H.O., [BD: 09-22-87], Appellant.
No. 50988-8-I.
Court of Appeals of Washington, Division 1.
December 22, 2003.
*884 Elaine L. Winters, Wash.App. Proj., Seattle, WA, for Appellant.
Rebecca J. Quirk, Sno. Co. Pros. Att., Everett, WA, for Respondent.
COX, A.C.J.
A trial court's discretionary decision whether to decline jurisdiction over a juvenile charged with a crime is properly based on the "preponderance of the evidence" standard,[1] not the "beyond a reasonable doubt" or the "clear and convincing evidence" standards. The court's reasoned determination to decline jurisdiction in the juvenile court over H.O.'s case was a proper exercise of discretion. We affirm.
The State charged H.O., four other juveniles, and an adult with first degree murder of Jerry Heimann. H.O. was thirteen years old at the time of Heimann's death and fourteen years old at the time of the hearings at issue here. Following the filing of charges in juvenile court, the State moved for the court to decline jurisdiction of H.O. and for transfer of her case to the superior court for treatment as an adult. H.O. opposed the motion, arguing that the juvenile court should retain jurisdiction.
A probation counselor was assigned to H.O.'s case to investigate and report on the State's request. The report filed by the counselor included consideration of the Kent factors in the recommendation to the court. Likewise, H.O. presented expert testimony to *885 support her request that the juvenile court retain jurisdiction.
The court considered testimony and other evidence at a hearing. Thereafter, the court issued an extensive written ruling in which it decided to decline jurisdiction over H.O.'s case. The court also entered written findings and conclusions on its decision.
H.O.'s appeal is primarily directed to the juvenile court's decline of jurisdiction.

BURDEN OF PROOF FOR DECLINE HEARING
H.O. argues that Apprendi v. New Jersey[2] and Ring v. Arizona[3] require that a juvenile court use the "beyond a reasonable doubt" standard to determine whether to decline jurisdiction over a juvenile charged with a crime. We disagree.
Neither of these cases nor the other authority that H.O. cites requires that Washington courts depart from the well-established principle that the "preponderance of the evidence" standard applies to such decisions.
In Washington, the statutory authority for the juvenile court to transfer cases involving juveniles charged with crimes is found at RCW 13.40.110(2), which states as follows:
(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding that the declination would be in the best interest of the juvenile or the public. The court shall consider the relevant reports, facts, opinions, and arguments presented by the parties and their counsel.
This statutory authority is augmented by the requirements of Kent v. United States,[4] which identifies eight factors a court must consider to safeguard the procedural due process rights of juveniles charged with crimes. Kent does not address what burden of proof applies in considering these factors.
No published Washington decision addresses whether the "beyond a reasonable doubt" standard applies to a court's decision to decline jurisdiction over a case in which a juvenile is charged with a crime. Prior to Apprendi, Washington rejected a claim that the standard of proof for a decline hearing should be "clear and convincing evidence."[5] In doing so, the Jacobson court reasoned that the proper standard of proof is "preponderance of the evidence," since the proceeding determined not ultimate guilt or innocence, but the forum in which guilt or innocence was to be found.[6] There need be only such evidence as will permit the court to soundly exercise its discretion.[7]
In Apprendi, the defendant pleaded guilty to certain offenses, the maximum term of which did not exceed ten years imprisonment. Under the plea agreement, the state of New Jersey reserved the right to seek an enhanced sentence based on the state's "hate crime" law. Following a hearing at which the trial court took evidence on the hate crime charge, the court found by a "preponderance of the evidence" that Apprendi's purpose had been to intimidate the victims because of racial hostility. The court imposed an enhanced sentence. The United States Supreme Court determined that the "hate crime" law impermissibly allowed the trial court to find an element of the defendant's crime by a mere "preponderance of the evidence." Such a procedure violates the defendant's due process right to "a jury determination *886 that [he] is guilty of every element of the crime with which he is charged, `beyond a reasonable doubt'."[8] Thus, the court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."[9]
Noting that Apprendi held that facts are not limited to "elements," H.O. contends that, because "the decline decision is based on facts," under Apprendi those facts must be established by proof "beyond a reasonable doubt." She also relies on Ring v. Arizona[10] for the proposition that any increase in a defendant's sentence also must utilize the "beyond a reasonable doubt" standard.
We do not read Apprendi and Ring as broadly as does H.O. In those cases, either the guilt or the sentence of an accused was at issue. Neither guilt nor sentencing is at issue at the decline hearing. Rather, the hearing is designed to determine whether the case should be heard in juvenile or adult court. Neither of these cases requires that this jurisdictional determination, intended only to determine the appropriate forum for trial, must be supported by the "beyond a reasonable doubt" standard.[11] All that is required is sufficient evidence for a judge to make the discretionary determination whether to retain or transfer jurisdiction of the case.
H.O. next asserts that In re Winship[12] dictates that the proof "beyond a reasonable doubt" standard governs the decision to decline jurisdiction. Again, we disagree.
The language in In re Winship makes clear that the standard applies to the adjudication phase of a juvenile proceeding. Nothing in that opinion supports a broader reading. As the court stated, the case "present[ed] the single, narrow question whether proof "beyond a reasonable doubt" is among the `essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult."[13] A declination hearing is not an adjudicatory proceeding.
Alternatively, H.O. cites to Nguyen v. Department of Health[14] for the proposition that if a "beyond a reasonable doubt" standard is not adopted, a "clear and convincing evidence" standard should be adopted in decline hearings. This point is unpersuasive.
Nguyen did not involve a decline hearing. Rather, it considered what standard was applicable in determining whether a physician should be deprived of a license to practice. It does nothing to undercut the reasoning or result in Jacobson, which rejects the "clear and convincing evidence" standard.
There is no basis in this jurisdiction to require anything more than a "preponderance of the evidence" standard in making a decision to decline jurisdiction. Jacobson continues to set forth the standard of proof for decline hearings. Accordingly, we reject H.O.'s argument that Apprendi and Ring mandate a "beyond a reasonable doubt" standard to decline jurisdiction.

*887 DECISION TO DECLINE JURISDICTION
H.O. asserts that the court abused its discretion in analyzing her case under the Kent factors. She claims that the juvenile court abused its discretion in assuming she was not amenable to treatment and improperly considered her lack of family support. She further argues the court's decision to decline jurisdiction was based upon insufficient evidence concerning treatment in the adult criminal justice system. We disagree and conclude that the trial court properly exercised its discretion when it declined jurisdiction over the case and transferred it to adult court.
A juvenile court's order declining jurisdiction is discretionary and is subject to reversal only if exercised upon a ground, or to an extent, clearly untenable or manifestly unreasonable.[15] We will not disturb the juvenile court's factual findings if they are supported by substantial evidence.[16] This court examines the entire record, including the court's oral opinion, to determine the sufficiency of the court's reasons for declination.[17] In determining whether juvenile court should decline jurisdiction, the court must consider the Kent factors:
(1) The seriousness of the alleged offense to the community and whether the protection of the community requires [declination].
(2) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner.
(3) Whether the alleged offense was against persons or against property ...
(4) The prosecutive merit of the complaint...
(5) The desirability of trial and disposition of the entire offense in one court when the juvenile's [accomplices] in the alleged offense are adults ...
(6) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living.
(7) The record and previous history of the juvenile ...
(8) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile by the use of procedures, services and facilities currently available [in] the Juvenile Court.[[18]]
A juvenile court's decision to decline jurisdiction is limited and is not properly exercised unless appropriate consideration is given to the Kent standards. Its failure to do so is an abuse of discretion.[19]
H.O. asserts that insufficient evidence led the juvenile court to improperly conclude that the first, sixth and eighth factors warranted transfer to adult court. The trial court issued a thorough, twenty-nine page "Decision on Decline of Jurisdiction." The decision considered not only the Kent factors, but also statutory factors of the best interest of the juvenile or the public (RCW 13.40.110(2)). The detail and completeness of the decision points to careful consideration of the Kent factors by the trial judge.
For example, after careful weighing of the Kent factors, the judge recommended one juvenile be retained in the juvenile system because of his limited participation in the murder, the likelihood of his reasonable rehabilitation, and protection of the public that *888 would exist during and following rehabilitation. His decision to do otherwise in H.O.'s case does not show an abuse of discretion.
It is uncontested that the second, third, and fourth Kent factors favor declining jurisdiction in H.O.'s case. Nonetheless, H.O. argues it was an abuse of discretion for the trial court to conclude the balance of the remaining factors favored decline of juvenile court jurisdiction.
Regarding the first factor, the trial court judge found the seriousness of the alleged offense to the community sufficient to support declining juvenile court jurisdiction. H.O. does not and cannot disagree on the seriousness of the alleged offense. Rather, she disputes whether protection of the community requires waiver. A review of the record shows that protection of the community does require waiver.
H.O. and her mother planned the killing for months and recruited several friends to carry out the killing. The eldest of the juveniles, J.G., struck Heimann with a full size aluminum bat as Heimann entered the kitchen. Two other juveniles, K.B. and M.S. then struck blows to Heimann's head and body with souvenir bats. A fourth juvenile, M.O, repeatedly stabbed Heimann in the upper back and the back of the head. H.O. repeatedly stabbed Heimann in the kidney area. To ensure Heimann's death, M.O. delivered a final swing of the bat to Heimann's head with such force that his brains and blood spilled out, remarking to J.G. that Heimann was now dead.
The judge determined that the seriousness of the crime and vicious manner of Mr. Heimann's death "literally caused by the hands of" H.O. and her accomplices was substantial evidence that the protection of the community required waiver. Further, H.O.'s active participation in the "planning, execution and aftermath of Mr. Heimann's death," encouragement of her friend M.O. to participate, and lack of remorse also provide support for the judge's decision to decline jurisdiction. Given this substantial evidence before the court, it was a proper exercise of discretion to find that the protection of the community required waiver.
The court also determined that the fifth and seventh factors weighed in favor of retaining jurisdiction. But that is not conclusive. Factors six and eight weighed in favor of declining jurisdiction and were evaluated in a combined fashion by the court. Regarding the sixth factor, H.O. argues her lack of sophistication and maturity stems from her turbulent home environment, situation, emotional pattern, and pattern of living. She claims the court failed to realize that her mother's manipulation was the root of H.O.'s involvement. H.O. relies on State v. Foltz[20] for the proposition that family influence is a factor supporting retention in juvenile court and argues the court did not take her mother's influence over H.O. into consideration in the decline decision.
The court did consider the relationship. But it decided not to weigh H.O.'s mother's influence so heavily as to conclude retention of jurisdiction was appropriate. The court stated "[t]he nature of Mr. Heimann's death suggests there is more to H.O.'s behavior and personality than loyalty to and manipulation by her mother. It is the violent, `hands-on' aspect of [the] killing that remains unexplained." The record supports this.
The court also considered H.O.'s future involvement with her family and stated, "[t]he lack of any real family support for H.O. is also discouraging and is likely to result in continued frustration, resentment and anger. The court is not persuaded that normal growth and development will override these factors." The record supports this determination as well.
Regarding the eighth factor's call for adequate protection of the public and the likelihood of the reasonable rehabilitation of the juvenile by the use of the procedures, services, and facilities currently available in the juvenile court, the court favored decline of juvenile jurisdiction. There is substantial evidence to support this determination. The "nature of Mr. Heimann's death," in combination with "the violent `hands-on' aspect of his killing," and "lack of family support," left *889 the juvenile court unpersuaded "that H.O. would embrace the benefits of rehabilitative therapy and direction offered by JRA." The court continued, "[t]here is a substantial risk to H.O. and to the community as a result."
In arguing the likelihood of rehabilitation, H.O. relies heavily on clinical community psychologist Dr. Marty Beyer's opinion testimony and recommendation that the juvenile court retain jurisdiction. The trial court, of course, was not bound to accept this opinion. The court found that Dr. Beyer "does not adequately explain, however, why amenability to rehabilitation exists when the cause of [her] alleged violent behavior remain[ed] unexplained." This was entirely appropriate for the trial court to question in this case.
The court also considered H.O.'s probation counselor's testimony and Decline of Jurisdiction Report in its analysis of the Kent factors. The counselor recommended waiver of juvenile jurisdiction. The counselor testified that it "struck [him] as odd" that H.O. did not show remorse in the killing, wanted to see her name in the newspaper regarding the murder, and talked in graphic terms of her involvement. H.O.'s lack of remorse, the seriousness of the crime, and length of confinement H.O. faced in the juvenile justice system all heightened concerns for community safety and factored into his recommendation that H.O. be declined from juvenile court jurisdiction.
With regard to the eighth factor, the juvenile court's decision to decline jurisdiction based upon findings concerning H.O.'s placement until age 18 was supported by substantial evidence. The juvenile court did consider the rehabilitation services available to juveniles through the JRA. Comparing services for offenders tried in juvenile court and those tried as adults, it noted that "[a] key difference in the delivery of services is DOC will have a much greater time within which to offer [those] services than will JRA."
Additionally, the Kent factors do not require the court to consider the facilities available to an offender tried as an adult. Nonetheless, there was testimony at trial that the same services are offered to females declined to the adult system as are offered to females retained by the juvenile system. In fact, at trial there was testimony from an Echo Glen administrator that it "would be fair to say that there are more resources for the girls who come to Echo Glen via DOC as opposed to those that go directly to Echo Glen, having been retained by the juvenile system."
While H.O. argues Echo Glen's contract with the State may lapse in the future, Kent obligates the court to evaluate only services "currently" available. There was sufficient evidence that given current conditions, H.O. would be placed at Echo Glen until age 18.
In sum, there was substantial evidence supporting the court's finding. The court properly exercised its discretion in determining waiver outweighed retaining jurisdiction.
We affirm the order declining juvenile jurisdiction and remanding to adult jurisdiction.
WE CONCUR: ELLINGTON and CHINDLER, JJ.
NOTES
[1] State v. Jacobson, 33 Wash.App. 529, 531, 656 P.2d 1103 (1982), review denied, 99 Wash.2d 1010 (1983).
[2] 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
[3] 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
[4] 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
[5] Jacobson, 33 Wash.App. at 530, 656 P.2d 1103.
[6] Jacobson, 33 Wash.App. at 531, 656 P.2d 1103. As of 1999, 47 other states have statutes granting juvenile court judges the power to waive jurisdiction over cases involving juvenile offenders so that they may be transferred to an adult criminal court. Forty-six states require proof by a substantial or a "preponderance of the evidence." Two states require the prosecution to prove by "clear and convincing evidence" that the juvenile is not amenable to rehabilitation. State v. Gonzales, 130 N.M. 341, 351, 24 P.3d 776 (2001). Massachusetts is the only state requiring proof "beyond a reasonable doubt."
[7] Jacobson, 33 Wash.App. at 531, 656 P.2d 1103.
[8] Apprendi, 530 U.S. at 477, 120 S.Ct. 2348 (quoting U.S. v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995)).
[9] Apprendi, 530 U.S. at 490, 120 S.Ct. 2348.
[10] 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556.
[11] Both the State and H.O. cite State v. Gonzales, 130 N.M. 341, 351, 24 P.3d 776 (2001) (rejecting an argument that Apprendi required a "beyond a reasonable doubt" standard to determine if a juvenile should be tried as an adult). H.O. further cites Commonwealth v. Quincy Q., 434 Mass. 859, 753 N.E.2d 781 (2001) (Adopting a "beyond a reasonable doubt" standard in a decision to sentence a juvenile as a `youthful offender'. However, the "beyond a reasonable doubt" standard is applied at the trial phase in Massachusetts  as is the case in Washington.). See also U.S. v. Miguel, 338 F.3d 995 (9th Cir.2003). (Holding Apprendi is inapplicable to the retention of jurisdiction in juvenile court.).
[12] 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
[13] In re Winship, 397 U.S. at 359, 90 S.Ct. 1068 (emphasis added).
[14] 144 Wash.2d 516, 29 P.3d 689 (2001), cert. denied, 535 U.S. 904, 122 S.Ct. 1203, 152 L.Ed.2d 141 (2002).
[15] State v. Toomey, 38 Wash.App. 831, 837-38, 690 P.2d 1175 (1984), review denied, 103 Wash.2d 1012 (1985), cert. denied, 471 U.S. 1067, 105 S.Ct. 2145, 85 L.Ed.2d 501 (1985).
[16] State v. M.A., 106 Wash.App. 493, 499, 23 P.3d 508 (2001).
[17] M.A., 106 Wash.App. at 498, 23 P.3d 508 (quoting State v. Holland, 98 Wash.2d 507, 518, 656 P.2d 1056 (1983)).
[18] The United States Supreme Court enumerated these factors in Kent v. United States, 383 U.S. 541, 566-67, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). The Washington Supreme Court adopted them to govern decline hearings in Washington. See State v. Williams, 75 Wash.2d 604, 606-07, 453 P.2d 418 (1969); see also State v. Massey, 60 Wash.App. 131, 803 P.2d 340, review denied, 115 Wash.2d 1021, 802 P.2d 126 (1990), cert. denied, 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991).
[19] M.A., 106 Wash.App. at 498, 23 P.3d 508 (quoting State v. Stevenson, 55 Wash.App. 725, 736, 780 P.2d 873 (1989)).
[20] 27 Wash.App. 554, 619 P.2d 702 (1980).