217 P.3d 384 (2009)
STATE of Washington, respondent,
v.
Joel R. RAMOS, Appellant.
In re Personal Restraint Petition of Joel Ramos, Petitioner.
Nos. 25740-1-III, 27524-8-III.
Court of Appeals of Washington, Division 3.
October 13, 2009.
*385 Sheryl G. McCloud, Law Offices of Sheryl Gordon McCloud, Seattle, WA, for Appellant.
Kenneth L. Ramm, Jr., Deputy Prosecuting Attorney, Yakima, WA, for Respondent.
KORSMO, J.
¶ 1 Joel Ramos challenges his 1993 convictions for four counts of first degree murder, arguing that the juvenile court lacked authority to grant his request to decline jurisdiction to the Yakima County Superior Court. We disagree. He also argues that the three counts of first degree felony murder should be reduced to one count because they occurred in the course of the same robbery. We also disagree with that argument and affirm the convictions. His accompanying personal restraint petition (PRP) is dismissed.

FACTS[1]
¶ 2 Mr. Ramos and his friend, Miguel Gaitan, both 14, broke into the Skelton family home on March 24, 1993. They were armed with knives. Mr. Michael Skelton, who was disabled, confronted the burglars and was stabbed and beaten to death by the two young men.[2] Mr. Gaitan then attacked and *386 killed Mrs. Lynn Skelton in the bathroom shower. He stabbed her 51 times and also beat her with a baseball bat. Twelve-year-old Jason Skelton went to his mother's aid. Gaitan killed him as well; Jason's body was found near his mother's.
¶ 3 The two young men searched the house for items to steal. They found six-year-old Bryan Skelton in his bedroom and told the youngster to go to sleep. They pulled the bedcovers over his head and Mr. Ramos then hit Bryan in the head with a piece of firewood, fracturing his skull. Bryan was also stabbed in the heart. Mr. Ramos later told the court that he killed Bryan in order to prevent him from identifying the two assailants.
¶ 4 The police investigation ultimately led to Mr. Ramos and Mr. Gaitan. Each was charged in the juvenile court with four counts of aggravated first degree murder; the prosecution filed a request for each young man to be declined to superior court. Mr. Gaitan was declined to adult court. A jury ultimately convicted him as charged and the trial court sentenced him to four consecutive terms of life in prison without possibility of parole.[3] This court upheld the declination ruling and affirmed the convictions.[4]
¶ 5 Counsel for Mr. Ramos reached a plea agreement with the prosecution while the Gaitan case was pending trial. Mr. Ramos agreed to waive juvenile court jurisdiction and plead guilty in superior court. His counsel presented a waiver form to the judge and explained the efforts made to prepare for the declination hearing. They also told the court how Mr. Ramos had been consulted at each step of the process. He had discussed the proposed plea agreement with his mother. The family had also sought a "second opinion" about the offerpresumably from another attorney.
¶ 6 The juvenile court judge considered the waiver and questioned Mr. Ramos about it at some length. Mr. Ramos confirmed that he had worked with his attorneys and consulted with his mother on the decision. After reviewing the stipulation and considering the Kent[5] factors, the court accepted the waiver and declined jurisdiction to the superior court.
¶ 7 The case then immediately proceeded to arraignment in adult court. The prosecution filed four counts of first degree murder. Count I alleged that Mr. Ramos committed premeditated intentional murder in the killing of Bryan Skelton. Counts II, III, and IV alleged that Mr. Ramos was guilty of first degree felony murder of the other three members of the Skelton family, each of whom was killed in the course of a first degree robbery. Count II specifically indicated that Mr. Ramos and Mr. Gaitan both killed Mr. Michael Skelton. Counts III and IV alleged that Mr. Gaitan had actually killed Mrs. Lynn Skelton and Jason Skelton in the course of a robbery in which Mr. Ramos was also participating.
¶ 8 Mr. Ramos pleaded guilty to the four counts of first degree murder. After another colloquy with Mr. Ramos, the court accepted the guilty pleas. Both parties recommended that the court impose the minimum possible sentenceconsecutive 240 month terms on each count. The trial court stated that the crimes "have no parallel in Yakima County history for violence" and had resulted in "the entire destruction of one family."[6] Noting that the murder of Bryan Skelton deserved more than 240 months, the court nonetheless imposed the requested sentence.
¶ 9 Thirteen years later, in December 2006, Mr. Ramos pro se filed a notice of appeal challenging the declination decision. This court dismissed the appeal as untimely. The Washington Supreme Court subsequently ordered that the matter "proceed as a *387 timely filed notice of appeal."[7] The appeal was reinstated and counsel appeared for Mr. Ramos. While the appellate record was being perfected, Mr. Ramos pro se filed a PRP. This court consolidated the two matters.

ANALYSIS

Appeal
¶ 10 The appeal presents two claims. First, Mr. Ramos contends that the trial court lacked statutory authority to decline jurisdiction over any youth under the age of 15. Second, he argues that the unit of prosecution for felony murder is the underlying felony rather than the murder victim. We will address the two challenges in the order stated.
¶ 11 Both of these issues present questions of law, which we review de novo. Cosmopolitan Eng'g Group, Inc. v. Ondeo Degremont, Inc., 159 Wash.2d 292, 298, 149 P.3d 666 (2006) ("Statutory interpretation is a question of law, subject to de novo review."); State v. Jackman, 156 Wash.2d 736, 746, 132 P.3d 136 (2006) ("Claims of double jeopardy, which are questions of law, are reviewed de novo.").

Declination of Jurisdiction
¶ 12 Several well understood principles govern appellate court construction of legislation. The purpose of statutory construction is to give effect to the meaning of legislation. Roberts v. Johnson, 137 Wash.2d 84, 91, 969 P.2d 446 (1999). Construction is only necessary when a statute is unclear or ambiguous. A statute that is clear need not be construed. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). "Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." Whatcom County v. City of Bellingham, 128 Wash.2d 537, 546, 909 P.2d 1303 (1996).
¶ 13 Former RCW 13.40.110 (1993) governs declination of juvenile court jurisdiction in favor of superior (adult) court jurisdiction.[8] As it existed at the time of these crimes in 1993, the statute provided in relevant part:
(1) The prosecutor, respondent, or the court on its own motion may, before a hearing on the information on its merits, file a motion requesting the court to transfer the respondent for adult criminal prosecution and the matter shall be set for a hearing on the question of declining jurisdiction. Unless waived by the court, the parties, and their counsel, a decline hearing shall be held when:
(a) The respondent is fifteen, sixteen, or seventeen years of age and the information alleges a class A felony or an attempt, solicitation, or conspiracy to commit a class A felony;
. . . .
(2) The court after a decline hearing may order the case transferred for adult criminal prosecution upon a finding. . . .
Former RCW 13.40.110.
¶ 14 This statute involves the discretionary decision to decline juvenile court jurisdiction.[9] Appellant presents two arguments concerning it. First, he argues that because the waiver language of the second sentence addresses cases involving youths aged fifteen to seventeen, there is no authority for juvenile courts to decline jurisdiction for anyone under the age of fifteen. Second, he contends that even if there is permissive authority to decline jurisdiction for youths younger than fifteen, there is no authority to waive the declination hearing. We disagree with both arguments.
¶ 15 There is only one natural reading of this statute. The first sentence permits declination of juvenile court jurisdiction by motion and the second sentence mandates, regardless of the desires of the parties, when *388 the juvenile court must consider declination because of the nature of the crime and the age of the offender. Nothing in the first sentence restricts, by age or variety of crime, the types of cases that are subject to a motion to decline jurisdiction. It is a grant of authority to transfer cases to adult court.
¶ 16 If this statute was intended to allow only certain cases to be declined, it is very peculiarly written. Under appellant's construction of the statute, the first sentence should say simply: "The juvenile court must hold a hearing, unless waived by the parties, concerning whether or not to decline jurisdiction in the following cases." By reading the statute as he does, Mr. Ramos essentially reads the first sentence out of the statute in contravention of a court's obligation to give effect to all language used in a statute. Whatcom County, 128 Wash.2d at 546, 909 P.2d 1303. His reading also severely restricts the scope of the declination power to certain serious crimes involving older youths, contrary to three decades of practice under the Juvenile Justice Act.[10] There is no authority for such a reading. We conclude that any case can be the subject of a motion to decline jurisdiction.
¶ 17 Mr. Ramos also contends that there is no authority to permit waiver of a declination hearing except in the circumstances where the Legislature has mandated a hearing. There are two problems with this argument. First, the language he seizes upon from the second sentence ("Unless waived . . . a decline hearing shall be held") is not a grant of the right to waive a hearing. It is a listing of the cases in which the juvenile court must consider the possibility of declining jurisdiction. The waiver language simply reflects that while the Legislature is mandating consideration of declination, it is not prohibiting the parties from waiving the hearing. The second problem with the argument is RCW 13.40.140(9). That statute states:
Waiver of any right which a juvenile has under this chapter must be an express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived.
The provision recognizes that any right can be waived if the juvenile is properly informed. There is no exclusion for the right to a declination hearing.
¶ 18 The juvenile court was permitted to decline jurisdiction of this case. Mr. Ramos had the authority to waive his right to a declination hearing. The trial court did not err by transferring this case to the adult court at the joint request of the parties.

Unit of Prosecution
¶ 19 Mr. Ramos also argues that the unit of prosecution for a felony murder case should focus on the underlying felony rather than on the number of victims. He contends that there was one robbery and, hence, only one felony murder. We believe that focus is inconsistent with both legislative intent and precedent.
¶ 20 Double jeopardy can arise in three different circumstances. As relevant here, double jeopardy prohibits multiple criminal convictions for one crime, absent evidence that the Legislature intended multiple convictions. In re Pers. Restraint of Orange, 152 Wash.2d 795, 815, 100 P.3d 291 (2004); State v. Calle, 125 Wash.2d 769, 776, 888 P.2d 155 (1995). When there are multiple violations of the same statute, courts must determine the "unit of prosecution" intended by the Legislature. State v. Adel, 136 Wash.2d 629, 634, 965 P.2d 1072 (1998). This is analytically different than the related double jeopardy problem of determining if the Legislature intended multiple punishments for conduct that violates multiple statutes. Id. at 633, 965 P.2d 1072.
*389 ¶ 21 To determine the unit of prosecution, courts must first analyze the criminal statute to see what conduct the Legislature is proscribing. Id. at 634-635, 965 P.2d 1072. Factors analyzed in past cases include demarcation lines drawn in the legislation (Adel), and the use of definite or indefinite articles and adjectives in describing the criminal conduct. See State v. Ose, 156 Wash.2d 140, 146, 124 P.3d 635 (2005); State v. Westling, 145 Wash.2d 607, 611-612, 40 P.3d 669 (2002); State v. Root, 141 Wash.2d 701, 710, 9 P.3d 214 (2000).
¶ 22 Here, the plain language of the felony murder statute shows that the focus of the statute is upon the killing of a human being rather than simply being another attempt to deter the underlying felony. RCW 9A.32.030 defines the crime of first degree murder. In relevant part, the statute provides:
(1) A person is guilty of murder in the first degree when:
(a) With a premeditated intent . . .
(b) Under circumstances manifesting an extreme indifference . . .
(c) He or she commits or attempts to commit the crime of . . .
[degrees of five different felony offenses], and in the course of or in furtherance of such crime or in immediate flight therefrom, he or she, or another participant, causes the death of a person other than one of the participants.
¶ 23 The very first sentence states the crime being definedfirst degree murder. There is no attempt to define any of the enumerated felony crimes. Those definitions are found in other chapters of the criminal code, while felony murder is found in the homicide chapter, chapter 9A.32 RCW.[11] Murder is a form of homicide. RCW 9A.32.010. "Homicide is the killing of a human being by . . . another." Id. Placement of this crime in the homicide chapter is a strong indication that the legislative focus is on deterring and punishing murder rather than merely increasing the punishment for robbers or burglars who kill in the course of their crimes.
¶ 24 The language of the statute also indicates that the unit of prosecution is each person killed rather than the number of felonies being committed. The crime becomes felony murder when, in the course of committing the felony, the offender causes the death of a person. The article "a" is normally read as "each" in this context. Ose, 156 Wash.2d at 146-148, 124 P.3d 635.
¶ 25 The reckless endangerment statute, RCW 9A.36.050(1), prohibits reckless conduct that "creates a substantial risk . . . to another person." (Emphasis added.) The language of that statute was analyzed for unit of prosecution purposes in State v. Graham, 153 Wash.2d 400, 103 P.3d 1238 (2005). There the defendant had been convicted of three counts of reckless endangerment arising out of one car accident that injured three passengers. Id. at 402-403, 103 P.3d 1238. The court noted that the word "another" is a compound of the words "an" and "other." Id. at 406 n. 2, 103 P.3d 1238. The indefinite article "an" means "a." Id. The court concluded that the language showed legislative intent to punish for each person endangered by the reckless conduct. Id. at 408, 103 P.3d 1238.
¶ 26 The Court of Appeals had reached a similar result earlier when construing the vehicular assault statute in State v. Clark, 117 Wash.App. 281, 71 P.3d 224 (2003), aff'd, 153 Wash.2d 614, 106 P.3d 196 (2005). There the defendant had injured three people when he collided with another car. Id. at 283, 71 P.3d 224. The vehicular assault statute penalized driving in a reckless manner that caused "substantial bodily harm to another." RCW 46.61.522(1)(a) (emphasis added). Focusing on the language "to another," the court found clear legislative purpose to punish by the number of victims rather than the number of accidents. Clark, 117 Wash.App. at 285, 71 P.3d 224. The unit of prosecution *390 was determined to be each victim. Id. at 285-286, 71 P.3d 224.
¶ 27 We believe that the same result follows here. The unit of prosecution for felony murder is each person killed. The language used by the Legislature, as construed by our courts in earlier cases, compels the result. The focus of this legislation is on the murder victim, not the crime that led to the murder. If the focus were, as Mr. Ramos argues, on the underlying felony instead of the persons killed, it would be possible for multiple felony murder prosecutions to result from one death. It is not uncommon for felony murder to be based on multiple predicate crimes. See, e.g., State v. Frawley, 140 Wash.App. 713, 167 P.3d 593 (2007) (defendant convicted of first degree felony murder based on both kidnapping and rape theories).[12] Under the appellant's theory, a prosecutor could multiply the number of murder convictions by proving multiple felonies underlying the killing. In Mr. Ramos' case, for instance, the prosecutor could also have charged felony murder under a first degree burglary theory as well as under the first degree robbery theory. This would be contrary to the results reached in cases involving killings alleged to have violated multiple homicide statutes. Those courts determined that in homicide cases, the Legislature intended that there be only one conviction for each killing. State v. Womac, 160 Wash.2d 643, 655-656, 160 P.3d 40 (2007) (citing State v. Schwab, 98 Wash.App. 179, 988 P.2d 1045 (1999)).
¶ 28 Mr. Ramos was properly convicted of three counts of first degree felony murder for the killings of Michael, Lynn, and Jason Skelton.

Personal Restraint Petition
¶ 29 Mr. Ramos, proceeding pro se, filed a motion in the Yakima County Superior Court to dismiss the case pursuant to CrR 8.3(b).[13] He alleged that the delay in permitting his direct appeal prejudiced his ability to defend the charges against him. Finding no apparent merit to the action, the trial court transferred the matter to this court for consideration as a personal restraint petition. CrR 7.8(c)(2). Due to the reinstatement of the appeal, this court accepted the transfer and consolidated the matters. RAP 7.2(e).
¶ 30 The burdens imposed on a petitioner in a PRP are significant. Because of the significant societal costs of collateral litigation often brought years after a conviction and the need for finality, relief will only be granted in a PRP if there is constitutional error that caused substantial actual prejudice or if a nonconstitutional error resulted in a fundamental defect constituting a complete miscarriage of justice. In re Pers. Restraint of Woods, 154 Wash.2d 400, 409, 114 P.3d 607 (2005). It is the petitioner's burden to establish this "threshold requirement." Id. To do so, a PRP must present competent evidence in support of its claims. In re Pers. Restraint of Rice, 118 Wash.2d 876, 885-886, 828 P.2d 1086, cert. denied, 506 U.S. 958, 113 S.Ct. 421, 121 L.Ed.2d 344 (1992). If the facts alleged would potentially entitle the petitioner to relief, a reference hearing may be ordered to resolve the factual allegations. Id. at 886-887, 828 P.2d 1086.
¶ 31 There are several shortcomings with this petition, which does not come close to meeting its burdens. The most obvious one is that since his convictions are being affirmed, there will be no retrial and, hence, no need for Mr. Ramos to again attempt to defend against the charges. Accordingly, the petition is dismissed.

CONCLUSION
¶ 32 The convictions are affirmed. The petition is dismissed.
WE CONCUR: KULIK, A.C.J. and BROWN, J.
NOTES
[1] Some of the historical facts about the murders and Mr. Gaitan's case come from our unpublished opinion in Mr. Gaitan's appeal, State v. Gaitan, noted at 80 Wash.App. 1077, 1996 WL 1062808 (1996).
[2] Michael Skelton was knocked unconscious in the initial assault. He revived before the attackers left the house and attempted to defend himself with a mop handle before the two attackers clubbed him to death. The base of a cordless telephone containing Mr. Skelton's blood was recovered from an outbuilding at the Ramos residence, along with bloody clothing and shoes belonging to Mr. Gaitan and Mr. Ramos.
[3] For each of the four victims the jury found three aggravating factors existed: (1) the murder was to conceal the identity of the killer(s); (2) the multiple victims were part of a common scheme; and (3) the killings were committed in furtherance of the crime of first degree burglary.
[4] State v. Gaitan, noted at 80 Wash.App. 1077, 1996 WL 1062808 (1996).
[5] Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).
[6] Report of Proceedings 31.
[7] Ramos v. State, No. 80365-0, 2008 WL 615652 (Wash., Order filed March 7, 2008).
[8] The statute was amended earlier this year to remove fifteen-year-olds from the mandatory decline hearing provisions. See Laws of 2009, ch. 454, § 3.
[9] This provision is not to be confused with the so-called "auto decline" statute which exempts serious violent crimes by sixteen- and seventeen-year-olds from juvenile court jurisdiction. See RCW 13.04.030(1)(e)(iv), enacted by Laws of 1994, 1st Spec. Sess., ch. 7, § 519. See generally, In the Matter of Boot, 130 Wash.2d 553, 925 P.2d 964 (1996).
[10] There are many instances of youths under the age of fifteen being declined to adult court. E.g., State v. H.O., 119 Wash.App. 549, 81 P.3d 883 (2003) (thirteen-year-old charged with first degree murder), review denied, 152 Wash.2d 1019, 101 P.3d 108 (2004); State v. M.A., 106 Wash. App. 493, 23 P.3d 508 (2001) (fourteen-year-old charged with first degree assault); State v. Pritchard, 79 Wash.App. 14, 900 P.2d 560 (1995) (fourteen-year-old charged with first degree assault and attempted first degree murder), review denied, 128 Wash.2d 1017, 911 P.2d 1342 (1996); State v. Massey, 60 Wash.App. 131, 803 P.2d 340 (1990), (thirteen-year-old charged with aggravated first degree murder), cert, denied, 499 U.S. 960, 111 S.Ct. 1584, 113 L.Ed.2d 648 (1991).
[11] While it arose in the context of a multiple statute double jeopardy challenge, the Supreme Court did consider the location of the statute in the criminal code as a sign of legislative intent to permit multiple prosecutions in In re Personal Restraint of Percer, 150 Wash.2d 41, 75 P.3d 488 (2003).
[12] A petition for review is pending in State v. Frawley, No. 80727-2.
[13] Mr. Ramos has also filed a statement of additional grounds for review in support of his appeal. We have considered his arguments and find that they are without merit and will not further address them.